Date signed September 12, 2014



PAUL MANNES
U. S. BANKRUPTCY JUDGE

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

IN RE:                                   :
                                         :
LYNNHILL CONDOMINIUM      :        Case No. 14-20607PM
                                         :        Chapter 11
           Debtor                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - :

## MEMORANDUM OF DECISION

      This bankruptcy case under Chapter 11 is before the court on the Motion of the United States Trustee to dismiss the case.  The Motion is brought pursuant to 11 U.S.C. § 1112(b).  The United States Trustee contends, as demonstrated by Lynnhill's post-confirmation failure in Case No. 10-19462, that was dismissed on April 17, 2014, that there is no purpose to keeping this entity in bankruptcy.  That is, there is no hope for it and there is a total absence of a reasonable likelihood of rehabilitation.  This Chapter 11 case was filed on July 2, 2014, to forestall the Washington Suburban Sanitary Commission from cutting off water service, which in turn would have caused all residents to become homeless.

      The condominium has 219 units in two 7-story buildings.  These units are largely owned by non-resident investors.  At least 25% of the units are vacant, and far more than half of the owners are not paying monthly fees.  The two buildings are in deplorable condition and need numerous repairs, including, but not limited to, new roofs, carpets and fire doors.  There are numerous other Code violations cited by Prince George's County inspectors.  Worst of all, none of the four elevators in these two buildings are operable.

      The court suspects, although there is no competent evidence before it to verify this suspicion, that many, if not the vast majority of the units, are under water.  That is, that they are

subject to secured claims that are far in excess of their value.  This leads to the conclusion that the only possible source of funds to the Debtor would appear to be from monthly fees, assessments and unpaid monthly charges, as there may be little or no equity in the units after payment of the senior liens.  Perhaps this explains the hesitation on the part of management to foreclose upon its statutory liens.  The records of the Debtor are incomplete, as demonstrated by the inability of the Debtor to state on Schedule B the amount of the arrearages owed to it.  In any event, no one believes that more than a small percentage of this old debt can be collected.  Such collection efforts would involve substantial attorneys fees.  The property is presently uninsured.

      This Motion is opposed by the Debtor and by a creditor, Nagle & Zaller, P.C., former attorneys.  The Debtor points out that it has been making substantial progress towards reorganization, having worked adequate assurance agreements under 11 U.S.C. § 366(b) with the Washington Gas Light Company, the Potomac Electric Power Company and the Washington Suburban Sanitary Commission, as well as a premium finance arrangement that would allow it to restore its insurance coverage.  While any party may, by September 12, 2014, file an objection to this finance arrangement, no one has filed an objection thus far.  The agreement appears to be a beneficial one and carries a rate of interest less than 6%.  In addition, two days before the hearing on the Motion to Dismiss, the Debtor filed a Motion to Employ an Accountant who is said to be experienced with not-for-profit entities such as Lynnhill.

      The effect of dismissal of this case, and the subsequent termination of utility services to the project, would be a disaster for the residents.  But the issue remains – what can title 11 do to enable this Debtor to put its house in order.

      From experience with the two prior cases, the court has observed a continuing history of mismanagement of this estate.  The court does not attribute this to dishonesty or other malfeasance, but simply an inability of persons in control of the condominium to do the things necessary to emerge with a functioning entity.  The utility bills are grossly disproportionate and these lead to very high condominium charges for the people who are actually paying their fair share.  The units are not individually metered so there is no incentive to conserve the energy on behalf of the unit holders.  Well over $1 million would be required to complete the roof repairs and to get the elevators in working order.  It is said that the cost of individual metering each unit would be well over a quarter million dollars.  The court is hard pressed to conceive that the present management of the Debtor could come up with a plan and the determination to raise the money required, particularly in view of the failure of the confirmed plan in the case dismissed

less than two months before the filing of this case.

The Debtor urges that it be given a chance to start again in this process. The court has little confidence in that course. However, the creditor opposing dismissal urges that if a trustee were appointed to handle affairs, that entity would approach the situation with an iron hand and would present a regime with discipline that is currently missing. It suggests that a trustee would crack down and make a sterner effort to collect the current fees and assessments by using the statutory tools available to the condominium. It would foreclose upon units, urging that such foreclosures would have two useful effects. First, they would serve as an incentive to residents to pay their fees, and second, if the properties were sold, arrangements would have to be made to bring the condominium fees current.

While there is no pending motion for the appointment of a trustee, under 11 U.S.C. § 1112(b)(1) the court may determine upon the filing of a motion to dismiss a case under Chapter 11 that such appointment would be in the best interests of creditors and the estate. The court is unwilling, at this point, to dismiss this case on a Motion filed barely a month after this petition was filed. This is not said to be critical of the Office of the United States Trustee, as it may turn out with hindsight that nothing is going to be accomplished by continued effort. However, the court does not believe that the creditors can be in any worse shape by the continuation of the case under the supervision of an independent trustee, particularly as the utilities, holders of a vast majority of the debt, have entered into adequate assurance agreements.

The effect upon the remaining creditors seems to be neutral in that there appears to be no possibility for them to be paid anything out of the wreckage of this entity. They would have a prayer for some recovery if there could be found a wonder worker who could effect a magical turnaround for Lynnhill. However, there is no doubt that it would be in the best interest of the unit holders to give this one final shot under the control of a third party.

cc:    All parties
       All creditors

**End of Memorandum Decision**